UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT FORT CAMPBELL
CASE NO. 5:10-CR-00017

UNITED STATES OF AMERICA             PLAINTIFF/
                                                                         APPELLEE

v.

KAREN HENDRIX                          DEFENDANT/
                                                                         APPELLANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Karen Hendrix's Appeal from the Judgment of Conviction and Sentence entered by the United States Magistrate Judge at Fort Campbell, Kentucky, on October 28, 2010. Both parties have filed briefs with the Court (Docket #6, 7). This matter is now ripe for adjudication.

**BACKGROUND**

On Sunday, May 9, 2010, Karen Hendrix and her two children attended a church service at the Memorial Chapel on the Kentucky side of Fort Campbell. Hendrix drove her two children to the chapel and arrived at approximately 10:40 a.m. for the 11:00 a.m. service. Hendrix left during the service to speak to a chaplain because she was upset that it was her first Mother's Day with her daughter, her husband was currently deployed, and no one had called her. She asked a church friend to watch her two children, both under the age of six, while she spoke with the chaplain. Hendrix states that at this time she was upset, "shaking and crying hysterically" and felt she should not drive herself home. According to Hendrix, she asked a church friend to drive her children home in her car while Hendrix followed them home as a passenger in her neighbor's vehicle. Hendrix then secured her two children in her own vehicle.

Sometime between approximately 12:30 p.m. and 1:50 p.m. that day, two military police

officers arrived at the chapel after receiving a radio call. Specialist Christopher Coates states that when he arrived, he observed Hendrix outside of her vehicle with the chaplain's assistant and a friend. According to Officer Coates, Hendrix appeared very intoxicated, was slurring her speech, was belligerent, and kept saying she just wanted to go home with her kids. He also detected a strong odor of alcohol off her. Hendrix's vehicle was running and her kids were properly secured in their car seats. He never saw Hendrix operating the vehicle or physically behind the wheel of the vehicle.

PFC Daniel Osieczanek was the other officer who arrived at the chapel that day. He arrived in a separate vehicle, and states that he observed Hendrix exiting her vehicle from the driver's side door. Officer Osieczanek also noted that the car was running, the kids were inside of the car, and Hendrix smelled strongly of alcohol.

Both officers took Hendrix to an empty parking lot to administer standard field sobriety tests. According to Officer Coates, Hendrix failed all four signs of the first test, the horizontal gaze nystagmus test, which checks for the shaking and movement of the eyes. Next, the officers had Hendrix remove her high heel shoes so that they could administer the one-leg stand test. Officer Coates noted that she was falling over and was incoherent. Officer Osieczanek also observed her falling over and crying. The officers determined that it was unsafe to proceed further with the testing and decided to take Hendrix to the provost marshal's office ("PMO"). The officers then located one of Hendrix's friends inside the church so that the friend could drive the children home.

At the PMO, the officers asked Hendrix to submit to a breathalyzer test, but she refused. Accordingly, the officers wrote her a citation for implied consent law. Hendrix properly and

2

legibly completed an implied consent form, noting her refusal to submit to the breathalyzer test. Hendrix told the officers that she had driven to church that morning with her children in the car. In addition, she acknowledged that she had consumed an alcoholic beverage around 4:00 or 5:00 a.m. and she was on prescription narcotics for depression.

Staff Sergeant Jason Craig Axelson, Sr., who was serving as the chaplain's assistant on duty at the chapel that day, observed Hendrix on two occasions. On the first occasion, he was walking away from the chapel and greeted Hendrix as she was entering. The interaction lasted for approximately two seconds and he did not observe anything unusual about her appearance or behavior. Officer Axelson observed Hendrix for the second time after the service had concluded. He noted that she was talking with Command Sergeant Woodring, an active participant in the church service, and she was very upset. He noted that Hendrix "was acting pretty hysterically, crying, begging to be released and let go." In addition, she was slurring her words and having a hard time standing up on her own. Officer Axelson also detected an odor of alcohol from Hendrix. He recalled her admitting she had been drinking and taking medication for depression and she stated she had consumed both of these items prior to coming to the chapel.

Hendrix was charged in an Information in the United States District Court for the Western District of Kentucky with (1) Driving Under the Influence (Second Offense); (2) two counts of Endangering the Welfare of a Minor; (3) two counts of Driving on a Suspended License; and (4) Public Intoxication. On October 28, 2010, Hendrix stood trial before the Magistrate Judge and was convicted of Driving Under the Influence ("DUI"). The other charges were dismissed by the Magistrate on a Judgment of Acquittal. Hendrix has timely appealed her

conviction.

**STANDARD**

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. Under Federal Rule of Criminal Procedure 58(g)(2)(B), "[a] defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry." FED. R. CRIM. P. 58(g)(2)(B). "The scope of the appeal is the same as an appeal to the court of appeals from a judgment entered by a district judge." FED. R. CRIM. P. 58(g)(2)(D). The district court may consider the original papers, exhibits, recording of the proceedings, and certified copies of docket entries. FED. R. CRIM. P. 58(g)(2)(C).

When reviewing the sufficiency of the evidence presented at trial, the appellate court must look at the evidence "in the light most favorable to the prosecution and give[ ] the prosecution the benefit of all reasonable inferences from the testimony." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir.), *cert. denied*, 549 U.S. 976 (2006). "The question the court must ask is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Caver*, 470 F.3d 220, 232 (6th Cir. 2006) (quoting *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989)). The defendant bears a heavy burden. *Abboud*, 438 F.3d at 589.

**DISCUSSION**

Hendrix was convicted of Driving Under the Influence (Second Offense) in violation of 18 U.S.C. § 13. Under § 13, the government may prosecute a defendant for a state offense

4

committed on federal property. *See id.* Under Kentucky law, "[a] person shall not operate or be in physical control of a motor vehicle . . . [w]hile under the influence of alcohol . . . ." Ky. Rev. Stat. Ann. § 189A.010(1)(b). Therefore, the government must prove beyond a reasonable doubt both that the defendant was operating or in physical control of a motor vehicle and that the defendant was under the influence of alcohol. *See Bridges v. Commonwealth*, 845 S.W.2d 541, 542 (Ky. 1993).

Hendrix argues that there was insufficient evidence at trial to establish either that she was operating or in physical control of a motor vehicle or that she was under the influence of alcohol. The Court disagrees.

Hendrix's first argument is that she was not operating or in physical control of the vehicle. The Kentucky Court of Appeals decision in *Wells v. Commonwealth*, 709 S.W.2d 847, 849 (Ky. Ct. App. 1986), relied upon by the Magistrate Judge, guides this Court's analysis. Under *Wells*, the Court looks to several factors to determine whether a person operated or was in physical control of a motor vehicle:

> (1) whether or not the person in the vehicle was asleep or awake; (2) whether or not the motor was running; (3) the location of the vehicle and all of the circumstances bearing on how the vehicle arrived at that location; and (4) the intent of the person behind the wheel.

*Id.* The Court may consider circumstantial evidence when determining whether a person was in physical control of a vehicle. *McCreary v. Commonwealth*, No. 2007-CA-000094-DG, 2008 WL 4601231, at *2 (Ky. Ct. App. Oct. 17, 2008) (citing *Blades v. Commonwealth*, 957 S.W.2d 246, 249-50 (Ky. 1997)). The *Wells* factors are not exclusive, *Williams v. Commonwealth*, No. 2008-CA-002352-MR, 2010 WL 3927733, at *2 (Ky. Ct. App. Oct. 8, 2010), as the appellate court looks to the totality of the circumstances in making its determination. *McCreary*, 2008 WL

5

4601231 at *3 (citing *White v. Commonwealth*, 132 S.W.3d 877, 883 (Ky. Ct. App. 2003)).

The first factor in *Wells* asks whether the person was awake or asleep. "[A] person who is asleep can seldom be said to physically control a motor vehicle." *Id.* (citing *Wells*, 709 S.W.2d at 850). In this case, there is no question that Hendrix was awake at all times. The second factor looks to whether the car was turned on. The undisputed evidence demonstrates that Hendrix's keys were in the ignition and the car was running at the time police came upon Hendrix.

Next, the Court examines "the location of the vehicle and all of the circumstances bearing on how the vehicle arrived at that location." *Wells*, 709 S.W.2d at 849. Hendrix drove to Memorial Chapel with her children to attend the 11:00 a.m. church service, which lasted approximately an hour. Hendrix acknowledges that she drove the car to the chapel and was planning to drive it home before she became upset during the service. The vehicle was parked in the chapel's lot. Thus, the vehicle was clearly at the chapel and in the parking lot because of Hendrix's sole operation of the vehicle.

Finally, the fourth factor directs the Court to consider the intent of the person behind the wheel. In this case, no one testified to observing Hendrix behind the wheel of the car. Officer Osieczanek, however, did testify that he saw Hendrix exiting the vehicle from the driver's side door. Hendrix insists that she was never in the front seat and did not intend to drive the vehicle home.

Because the *Wells* factors are not exclusive and the Court looks to the totality of the circumstances, the Court concludes that a rational trier of fact could find that Hendrix was in physical control of the vehicle beyond a reasonable doubt. Hendrix drove the car to the chapel

and testified that she had planned to drive it home after the hour-long service. She securely placed her children in the car, which was running. Prior to military police arrival, Hendrix was observed arguing with Command Sergeant Woodring, asking that he release her and let her go. Officer Osieczanek observed her exiting the car from the driver's side door, and officers had to locate a friend to drive the vehicle to Hendrix's home. Viewing the evidence in the light most favorable to the prosecution, as the Court must, there is sufficient evidence to find beyond a reasonable doubt that Hendrix was in physical control of her vehicle.

Next, the Court must determine whether any rational trier of fact could have found beyond a reasonable doubt that Hendrix was under the influence of alcohol. Again, the Court believes there is sufficient evidence to support such a finding.

Three people testified that Hendrix smelled strongly of alcohol on the day in question. In addition, Hendrix failed two field sobriety tests administered by military police officers. She had difficulty walking, was belligerent, and was slurring her speech. At the PMO, she refused to submit to a breathalyzer test. She admitted to drinking and taking prescription drugs earlier that morning.

The only testimony that Hendrix was not intoxicated during her drive to the chapel included Officer Axelson's recollection of meeting Hendrix briefly for one or two seconds as she was entering the church and noticing nothing unusual, and Hendrix's own testimony that she was not intoxicated and participated in the church service. In addition, defense counsel noted that the implied consent form was filled out properly and legibly.

Drawing all reasonable inferences in favor of the prosecution, the weight of the evidence is sufficient to for a rational trier of fact to find beyond a reasonable doubt that Hendrix was

under the influence of alcohol at the time she was in physical control of her vehicle.

Accordingly, Hendrix's appeal is without merit.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Karen Hendrix's conviction is AFFIRMED and this appeal is DISMISSED.